UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHANNON L. MAYO, SR.,           : CIVIL NO: 1:10-CV-01869
                                :
          Plaintiff             :
                                : (Chief Judge Kane)
     v.                         :
                                : (Magistrate Judge Smyser)
THE COUNTY OF YORK, *et al.*,    :
                                :
          Defendants            :

**REPORT AND RECOMMENDATION**

There are numerous claims and numerous defendants in this prisoner case. There are two motions to dismiss the amended complaint pending. Because the amended complaint fails to state a claim upon which relief may be granted against eight of the thirty-six defendants, we recommend that the motions to dismiss be granted in part and denied in part.

I. Background and Procedural History.

The plaintiff, a prisoner proceeding *pro se*, commenced this action by filing a complaint. On August 29, 2011, he filed an amended complaint.

The plaintiff's amended complaint contains numerous claims including claims that, while he was a pretrial detainee

at the York County Prison, the defendants denied him appropriate medical treatment, retaliated against because he filed grievances, subjected him to unconstitutional conditions of confinement, denied him due process in connection with disciplinary proceeding and in connection with his restricted confinement, punished him more severely than other inmates, denied him access to the courts, denied him religious materials, and used excessive force on him.

The amended complaint names thirty-six defendants.  The defendants fall into two groups: defendants PrimeCare Medical, Inc., Haskins, Von Kiel, Rochow, Jensen, Misosi, Shafer, Becker, Shannon, Hare, Windon, Mae Baldwin, and Mike Baldwin (medical defendants) and defendants York County, Hoke, Sabol, Doll, Buono, Steiner, Reihart, York County Prison Board, Krebs, Weaver, Rohrbaugh, Daryman, Fink, Ronk, Krinock, Skaggs, Dill, Ison, Fransisco, Straley, Gembe, Wilson, and Scott (county defendants)[1].

---

1.  In numerous instances, the way the plaintiff spells a defendant's name differs from the way defense counsel spells a defendant's name.  Because we assume that counsel knows the spelling of the names of clients, we adopt the spelling used by defense counsel.

This Report and Recommendation addresses a motion to dismiss the amended complaint filed by the medical defendants and a motion to dismiss the amended complaint filed by the county defendants.


II.  Motion to Dismiss and Pleading Standards.

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint. In deciding a motion to dismiss the complaint, we must accept all well-pleaded factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *McTernan v. City of York,* 564 F.3d 636, 646 (3d Cir. 2009)(quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v.*

*Iqbal,* 129 S.Ct. 1937, 1949 (2009).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Id.*  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts." *Id.*  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft, supra,* 129 S.Ct. at 1950.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft, supra,* 129 S.Ct. at 1949 (quoting *Twombly*, *supra,* 550 U.S. at

4

570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  But "a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer,* 131 S.Ct. 1289, 1296 (2011).  Rule 8(a)(2) "requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Id.*  The factual detail necessary to satisfy the standard will vary depending on the case. *In re Insurance Brokerage Antitrust Litigation,* 618 F.3d 300, 320 n.18 (3d Cir. 2010).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

III. Discussion.

    A.  Medical Defendants.

        1.  Medical Care Claims.

As the plaintiff was a pretrial detainee during the relevant times, the Due Process Clause rather than the Eighth Amendment is applicable in this case. *Boring v. Kozakiewicz,* 833 F.2d 468, 471 (3d Cir. 1987)("Pretrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause.").  "The Due Process clause requires the government to provide appropriate medical care." *Id.*

The due process rights of a pretrial detainee are "at least as great" as the Eighth Amendment protections to which a convicted prisoner is entitled. *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983).  Without determining how much more protection, if any, a pretrial detainee is entitled to above the protection provided to a convicted prisoner, the United States Court of Appeals for the

Third Circuit has applied the standards enunciated in Eighth
Amendment cases to medical claims by pretrial detainees. *See
Boring, supra,* 833 F.2d at 473; *Natale, supra,* 318 F.3d at 581.

Borrowing from the Eighth Amendment standard, in order
for the plaintiff to state a viable medical care claim he must
allege that the defendants acted with deliberate indifference
to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97
(1976). *See also Groman v. Township of Manalapan,* 47 F.3d 628,
637 (3d Cir. 1995)("Failure to provide medical care to a person
in custody can rise to the level of a constitutional violation
under § 1983 only if that failure rises to the level of
deliberate indifference to that person's serious medical
needs.").

The plaintiff alleges that he has chronic obstructive
pulmonary disease, reactive airway disease, and emphysema.  The
medical defendants do not argue that the plaintiff does not
have serious medical needs.  Rather, the medical defendants
contend that the complaint fails to state a claim upon which
relief can be granted because the plaintiff has not alleged

facts from which it can be inferred that they were deliberately indifferent to the plaintiff's serious medical needs.

Deliberate indifference is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 840 (1994). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009). To act with deliberate indifference, the prison official must have known of the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it. *Farmer, supra,* 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Deliberate indifference may be found in a variety of circumstances including where a prison official knows of a prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical treatment based on a non-medical reason, denies prescribed or recommended treatment or persists in a particular course of treatment "'in the face of resultant pain and risk of permanent injury.'" *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.

1999)(quoting *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir.
1990)).

"It is well-settled that claims of negligence or
medical malpractice, without some more culpable state of mind,
do not constitute 'deliberate indifference.'" *Id.* "Medical
malpractice does not become a constitutional violation merely
because the victim is a prisoner." *Estelle, supra,* 429 U.S. at
106. "While the distinction between deliberate indifference
and malpractice can be subtle, it is well established that as
long as a physician exercises professional judgment his
behavior will not violate a prisoner's constitutional rights."
*Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir.
1990).

The plaintiff alleges that defendant Dr. Von Kiel
prescribed certain medications and treatments for him but that
on numerous occasions the other medical defendants, who are
nurses, physician's assistants, and administrators, failed to
provide those medications and treatments as prescribed. He
alleges the following facts in his amended complaint.

On October 7, 2009, defendant Von Kiel prescribed respiratory medications for nebulizer treatments four times daily and as needed.  He also prescribed a Quar inhaler (two puffs twice daily) and an Albuterol inhaler (four times daily or as needed).  He further prescribed prednisone.

Defendant Misosi told the plaintiff that he could call home to have someone bring his nebulizer solutions to the prison and that the medical department would dispense them to him.  In November of 2009, the plaintiff's fiancé brought numerous medications to the prison for the plaintiff, but he was not provided with some of them.

On December 13, 2009, defendant Nurse Shafer dropped the mouthpiece to the plaintiff's nebulizer on the floor. Herpes, MRSA, and HIV are all present at the prison.  Instead of sanitizing the mouthpiece, defendant Shafer attempted to give it to the plaintiff to put in his mouth.  After the plaintiff questioned her, he was charged with disrespect toward an employee.  Defendant Shafer took the mouthpiece in the treatment room and then brought it back and said that she had rinsed it off.  Since that time, the plaintiff has been getting

10

sores on his lips and tongue.  According to another nurse, the plaintiff had a herpes outbreak on his mouth.

Now the plaintiff is distrustful of the medical profession.  On one occasion, defendant nurse Shannon was drawing blood from the plaintiff.  Because he did not see where the needle to draw the blood came from, the plaintiff asked defendant Shannon to get another one.  Defendant Shannon was offended.

On February 26, 2010, the plaintiff asked defendant Krebs to call the medical department and inform them that he needs a nebulizer treatment.  Krebs told the plaintiff that he had called the medical department.  After yelling for help for four hours, the plaintiff and another inmate starting kicking their cell doors to get help because the plaintiff could not yell anymore and his breathing was very labored.  Defendants Krebs and Fink made rounds every 15 minutes and the plaintiff asked them to call the medical department.  They were aware of his serious illness and constant need for respiratory medication.  They ignored his pleas.  During one of defendant Krebs' rounds, the plaintiff told him that he was coughing up

11

blood.  Krebs told him to lie down.  A couple of hours later, a
nurse brought the plaintiff's breathing treatment.  She said
she had just got the call.  Approximately 10 ½ to 11 hours
elapsed between the plaintiff's prior breathing treatment and
that treatment.

On March 10, 2010, defendant Rochow stopped the
plaintiff's nebulizer treatments.  The plaintiff then filed a
grievance.  After a nurse called the physician assistant or
doctor on call, the plaintiff was given an emergency nebulizer
treatment.  A couple of days later, he spoke to defendant
Misosi about his breathing treatments and she said she was "on
it."  On March 15, 2010, the plaintiff met with defendant
Misosi.  She questioned the plaintiff about his medical
records, which she indicated showed that he had reactive airway
disease and asthma but not emphysema.  The plaintiff told her
that Dr. Lampher had diagnosed him with the early stages of
emphysema, and he questioned her about why defendant Rochow had
stopped a medication prescribed by his doctor.  Defendant
Misosi told the plaintiff that his treatments were stopped
because of his socializing in the medical department, but she
stated that she was only speculating.

Defendant Jensen responded to the plaintiff's grievance indicating that the nebulizer treatments were stopped because the "provider" felt that he was potentially using too much medication.  Defendant Doll affirmed that grievance response.

At one point the plaintiff was placed in a cell near the showers, which because of the fumes from the disinfectant used on the showers, exacerbated his COPD.  During that time he was using three nebulizer treatments a day.  Prior to that, however, he was using only half of the prescribed number of nebulizer treatments and Albuterol inhalers.

Defendant Von Kiel was not aware that defendant Rochow had stopped the plaintiff's nebulizer treatments.  On March 17, 2010, when he became aware, he resumed the nebulizer treatments.  He prescribed the nebulizer medications in two separate vials.

On April 28, 2010, the plaintiff woke up laboring to breathe and alerted an officer to his need for a breathing treatment.  The officer sent the plaintiff to the medical

13

department, but because it was so early and no guards were
posted in the medical department, the plaintiff was sent to the
"cross halls" waiting area.  A nurse set up the nebulizer and
put the two vials of solution into the unit.  The breathing
treatment took 25 to 30 minutes to complete.  Defendant Weaver,
however, would not let the plaintiff finish the treatment.
Because of the interference with his breathing treatment, the
plaintiff did not get the benefit of the medication, and he
went to his cell congested and not able to expectorate the
mucus caused by his emphysema.  His breathing was panicked and
labored until 11:00 a.m.

On August 20, 2010, defendant Jensen, under the
authority of defendant Doll, moved the plaintiff to Med Cell 2
and placed him on a medication delivery program, but that
program did not give him the option for additional doses of his
medications as needed.  Defendant Jensen had the plaintiff's
chart marked "no PRN" medication.  Defendant Jensen stopped the
plaintiff's nebulizer treatments while the plaintiff was in Med
Cell 2 because the plaintiff stepped on and broke an extension
cord.

On one occasion while in Med Cell 2, the plaintiff woke up wheezing and with labored breathing.  A corrections officer called the medical department, and she was told that the plaintiff's inhalers are to be used four times a day and that the plaintiff would have to wait until 8:00 a.m.  To help expectorate the heavy muscus, the plaintiff had to fill the sink with hot water, put a towel over his head and the sink, and breathe the water vapors.  The plaintiff asserts that he could have had an acute asthma attack and died.  He believes that the defendants were trying to kill him.

In August of 2010, defendant Jensen changed the plaintiff's medication so that the plaintiff received the Albuterol inhaler for only two puffs four times a day.  He mandated that the plaintiff not receive any other medications including nebulizer treatments.

Defendant Dr. Von Kiel was not aware that the plaintiff's nebulizer treatments had been stopped.

Although not prescribed that way by the doctor, on several occasions the solutions for his nebulizer treatments

were combined in one vial.  The solutions in the combined vials were not the same strength as the individual vials.

The plaintiff filed grievances concerning missed treatments and the treatments with the combined vial. Defendant Mike Baldwin responded by stating that additional treatments outside of the four being given will result in an overdose of medication.  Defendant Doll concurred with that response even though he knew that the plaintiff had been prescribed twice as much.

After they stopped the plaintiff's nebulizer treatments a second time (on September 20, 2010), defendants Jensen, Misosi, and Mike Baldwin prevented the plaintiff from seeing Dr. Von Kiel.  Defendant Doll knew that the plaintiff's treatments had been stopped and he concurred with that decision.

On one occasion, the plaintiff had an asthma attack and went to the medical department.  Defendant Shannon listened to his lungs and gave him an inhaler.  But because of the "No PRN" rule, defendant Shannon would not give him anything else.

16

On April 2, 2011, the plaintiff saw defendant Dr. Von Kiel.  He was permitted only one nebulizer treatment.

The plaintiff requested Iprotropium bromide from defendants Rochow and Von Kiel but was told "no."

Because his nebulizer treatments were stopped, the plaintiff suffered lung damage as shown by a peak flow meter test.  He also suffered depression and anxiety about dying from severe coughing and lack of breath.

The plaintiff filed numerous grievances about the provision of his breathing treatments.  He also sent a letter to defendant Haskins, the Vice President of PrimeCare Medical, about his nebulizer treatments being stopped.  He received a response from Sandra Ulerick, the Director of Risk Management of PrimeCare Medical.  She responded that a review of the plaintiff's medical records revealed that he is receiving treatment appropriate to his condition.

The medical defendants assert that the facts alleged by the plaintiff show that the plaintiff was being treated but that he merely disagrees with the treatment that he was receiving.  They also assert that the course of the plaintiff's medical treatment was modified based on their professional medical judgments.

Prison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates.  Courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment." *Little v. Lycoming County*, 912 F.Supp. 809, 815 (M.D.Pa. 1996)(quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).  Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth

amendment violation."); *White*, *supra,* 897 F.2d at 110 (mere
disagreement over proper treatment does not state a claim upon
which relief can be granted).

     As to defendant Dr. Von Kiel, we agree that the
plaintiff has alleged nothing more than a difference of opinion
about what medication should be prescribed.  But as to
defendants Jensen, Misosi, Rochow, Shannon and Mike Baldwin,
the plaintiff has alleged facts from which it can reasonably be
inferred that these defendants failed to provide the plaintiff
with medical treatment as prescribed by Dr. Von Kiel.  Also, he
asserts, he informed defendant Haskins of the interference with
his prescribed treatments and that Haskins did nothing to
correct the situation.  Thus, although the amended complaint
fails to state a claim upon which relief can be granted against
defendant Von Kiel, it does state a claim upon which relief can
be granted against defendants Haskins, Jensen, Misosi, Rochow,
Shannon, and Mike Baldwin.

     The plaintiff alleges that defendant Shafer dropped the
mouthpiece to his nebulizer on the floor and then gave it to
him to use without properly sterilizing it.  Although that may

amount to negligence, it does not rise to the level of deliberate indifference.  Thus, the amended complaint fails to state a claim upon which relief can be granted against defendant Shafer.

The plaintiff also has not alleged facts from which it can reasonably be inferred that defendants Becker, Hare, Windon, and Mae Baldwin were deliberately indifferent to his serious medical needs.  Accordingly, the amended complaint fails to state a claim upon which relief may be granted against those defendants.

Defendant PrimeCare Medical contends that it cannot be held vicariously liable for the alleged unconstitutional acts of its employees.

"Liability may not be imposed under § 1983 on the principle of *respondeat superior*."  *Hetzel v. Swartz*, 909 F.Supp. 261, 264 (M.D. Pa. 1995).  Liability under 42 U.S.C. § 1983 may only be based upon a defendant's personal involvement in conduct amounting to a constitutional violation. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d

Cir. 1976).  The principle that *respondeat superior* liability
does not exist under 42 U.S.C. § 1983 extends even to a for-
profit private corporation. *See Natale v. Camden County
Correctional Facility*, 318 F.3d 575, 583 (3d Cir. 2003)("PHS
[Prison Health Services] cannot be held responsible for the
acts of its employees under a theory of respondeat superior or
vicarious liability.")

Like a municipality, a corporation may be held liable
only for its own unconstitutional acts.  It may be liable in
one of three ways: First, it will be liable if its employee
acted pursuant to a formal policy or a standard operating
procedure long accepted within the entity; second, liability
will attach when the individual has policy-making authority
rendering his or her behavior an act of official policy; third,
it will be liable if an official with authority has ratified
the unconstitutional actions of a subordinate, rendering such
behavior official for liability purposes.  *See McGreevy v.
Stroup,* 413 F.3d 359, 367 (3d Cir. 2005).

Although PrimeCare Medical cannot be held liable on the
basis of respondeat superior, the plaintiff has alleged that

21

defendant Haskins, having final policy-making authority for PrimeCare Medical, acquiesced and ratified improper care provided to him.  Accordingly, the amended complaint states a claim upon which relief may be granted against defendant PrimeCare Medical.

    2.  Retaliation Claims.

In addition to claiming that defendants Misosi and Jensen denied him prescribed care, he claims that they did so in retaliation for his filing of grievances.

A prisoner claiming that a defendant has retaliated against him for exercising his constitutional rights must prove that: 1) his conduct was constitutionally protected; 2) he suffered "adverse action" at the hands of the defendant; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision of the defendant. *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002).

Defendants Jensen and Misosi contend that the plaintiff's allegations of retaliation are conclusory and that he has not alleged facts showing a causal connection between the filing of his grievances and adverse actions allegedly taken against him.  However, given the plaintiff's assertion that his move to segregation followed shortly after his complaints, the plaintiff has not failed to state a retaliation claim upon which relief can be granted.

3. Due Process Claim.

The medical defendants also claim that the amended complaint fails to state a due process claim upon which relief may be granted based on his placement in Med Cell 2.

The plaintiff alleges that, on August 20, 2010, defendant Jensen, under the authority of defendant Doll, moved him to Med Cell 2 and placed him on a medication delivery program.  That program did not give him the option for additional doses of his medications as needed.  He alleges that

the cell is only 6½ by 9 feet, that it has no window, that he

was in that cell for sixty days, that for over a month he had

no outside recreation, that for six weeks he was the only

inmate housed in that area, that he had no razor, comb or

brush, that his breakfast and lunch were always cold, that he

could clean the cell only once a week, and that he got an

infection from the unsanitary toilet in the cell.  He asserts

that the same medication procedures that he received in Med

Cell 2 could have been instituted in the Echo block, known as

the hole.  He asserts that there was no need to isolate him in

Med Cell 2.  He asserts that defendants Jensen, Misosi, and

Doll conspired to place him in that cell because of the

numerous grievances that he had filed.

      Again since the plaintiff was a pretrial detainee

rather than a convicted prisoner, the Due Process Clause rather

than the Eighth Amendment is applicable.  The Third Circuit has

emphasized that as to conditions-of-confinement claims the

standards applicable to pretrial detainees are different than

those applicable to convicted prisoners. *See Hubbard v. Taylor*,

399 F.3d 150, 164 (3d Cir. 2005)(reversing and remanding grant

of summary judgment to prison officials on pretrial detainee's

conditions-of-confinement claim because the district court improperly analyzed the claim under the Eighth Amendment rather than the Due Process Clause of the Fourteenth Amendment).

The Supreme Court addressed the standard by which conditions of confinement are evaluated under the Due Process Clause for pretrial detainees in *Bell v. Wolfish*, 441 U.S. 520 (1979).  The Court held that the proper inquiry is whether the conditions amount to punishment of the detainee. *Id.* at 535. "For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.*  Once an inmate is properly detained to ensure his presence at trial, the government "may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536-37.  In determining whether a condition amounts to punishment:

> [a] court must decide whether the disability
> is imposed for the purpose of punishment or
> whether it is but an incident of some other
> legitimate governmental purpose.  Absent a
> showing of an expressed intent to punish on
> the part of detention facility officials, that
> determination generally will turn on 'whether
> an alternative purpose to which [the

> restriction] may rationally be connected is
> assignable for it, and whether it appears
> excessive in relation to the alternative
> purpose assigned [to it].' Thus, if a
> particular condition or restriction of
> pretrial detention is reasonably related to a
> legitimate governmental objective, it does
> not, without more, amount to "punishment."
> Conversely, if a restriction or condition is
> not reasonably related to a legitimate goal –
> if it is arbitrary or purposeless – a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not
> constitutionally be inflicted upon detainees
> *qua* detainees.

441 U.S. at 538-39 (footnotes and citations omitted).

The United States Court of Appeals for the Third
Circuit has distilled the teachings of *Bell* into a two-step
test: 1) whether any legitimate purposes are served by the
conditions; and 2) whether the conditions are rationally
related to those purposes.  *Hubbard, supra,* 399 F.3d at 159
(quoting *Union County Jail Inmates v. DiBuono,* 713 F.2d 984,
992 (3d Cir. 1983)).  "In assessing whether the conditions are
reasonably related to the assigned purposes, we must further
inquire as to whether these conditions 'cause [inmates] to
endure [such] genuine privations and hardship over an extended
period of time, that the adverse conditions become excessive in
relation to the purposes assigned to them." *Id.* at 159-60.  The

26

"inquiry into whether given conditions constitute "punishment" must therefore consider the totality of the circumstances within an institution." *Id. at* 160.

The plaintiff's allegations in the amended complaint regarding the conditions under which he was kept in Med Cell 2, his assertion that there was not a medical reason to keep him in Med Cell 2 as opposed to the hole, and his assertion that the motivation to place him in Med Cell 2 was retaliatory state a due process claim upon which relief can be granted as to his placement and confinement in Med Cell 2.

4. Medical Malpractice Claims.

The medical defendants also contend that the medical malpractice claims against them should be dismissed because the plaintiff failed to timely file certificates of merit as required by Pa.R.Civ.P. 1042.3. In his brief, the plaintiff asserts that he is not presenting any medical malpractice claims.[2]

---

2. Given the plaintiff's assertion that he is not presenting any
(continued...)

B.   County Defendants.

The county defendants assert that the plaintiff's
amended complaint, which consists of over 500 paragraphs, is
long and rambling rather than short and plain as required by
Fed.R.Civ.P. 8(a).  While the plaintiff's amended complaint is
long and perhaps too detailed in some respects, given the
number of defendants and the number of claims and the leeway
given *pro se* litigants, we cannot say that it fails to state a
claim upon which relief can be granted for that reason.

The plaintiff alleges that he filed numerous grievances
regarding the events at issue in this case.  He has sued a
number of defendants who denied his grievances and grievance
appeals.  The county defendants contend that the plaintiff's
complaints involving the grievance system fail to state a claim
upon which relief can be granted.  They also contend that the

2.  (...continued)
medical malpractice claims, certificate of merits are not required.
Nevertheless, the plaintiff filed a motion (doc. 87) for leave to
file certificates of merit and then he filed purported certificates
of merit (doc. 90).  Since certificates of merit are not required
because the plaintiff is not presenting medical malpractice claims,
by a separate order we have denied the plaintiff's motion for an
extension of time in which to file certificates of merit and we
have stricken the purported certificates of merits that the
plaintiff did file.

plaintiff has failed to allege personal involvement on the part of the defendants involved in the grievance process.

"Liability may not be imposed under § 1983 on the principle of *respondeat superior.*" *Hetzel v. Swartz*, 909 F.Supp. 261, 264 (M.D. Pa. 1995). "Liability based on *respondeat superior* arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm." *Santiago v. Warminster Twp.,* 629 F.3d 121, 128 (3d Cir. 2010)(quoting *Monell v. Dep't of Soc. Services of New York,* 436 U.S. 658, 692 (1978)). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1948 (2009).

There are two viable theories of supervisory liability. *Santiago*, *supra,* 129 F.3d at 129 n.5. Under the first theory, a supervisor can be liable if he or she established and maintained a policy, practice or custom which directly caused the constitutional harm. *Id.* Under the second theory, a

supervisor can be liable if he or she participated in violating the plaintiff's rights, directed others to violate the plaintiff's rights or as the person in charge had knowledge of and acquiesced in his or her subordinates' violations of the plaintiff's rights. *Id.*

"It is well-established that inmates do not have a constitutionally protected right to a prison grievance system." *Mitchell v. Dodrill,* 696 F.Supp.2d 454, 469 (M.D.Pa. 2010)(Rambo, J.).  Thus, a denial of a grievance or grievance appeal does not amount to a violation of a prisoner's constitutional rights. Id.

Although the amended complaint fails to state an independent claim upon which relief can be granted based on the processing of his grievances, the fact that the plaintiff filed grievances is relevant to the plaintiff's other claims.  In some circumstances a grievance may be sufficient to put a prison official on notice of alleged continuing abuse by other prison staff and therefore may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims. *See Atkinson v.*

30

*Taylor,* 316 F.3d 257, 270-271 (3d Cir. 2003)(refusing to hold as a matter of law that correspondence or conversations with prison officials do not constitute sufficient evidence of actual knowledge and acquiescence). *See also Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.").

The plaintiff alleges that he filed grievance informing the defendants of the ongoing denial of prescribed medical care but that the defendants failed to take corrective action.  We conclude that the amended complaint sufficiently alleges personal involvement on the part of the defendants involved in the grievance process.

As to the claims against the corrections officers, the corrections defendants contend that the plaintiff has failed to allege with sufficient specificity the day, time, place, who

did what, and what constitutional right was violated.  We conclude that as to most of the defendants the plaintiff's amended complaint is sufficiently specific.  But we conclude that the amended complaint fails to plead personal involvement in an alleged constitutional violation on the part of defendants corrections officers Dill and Ison.  Accordingly, the amended complaint fails to state a claim upon which relief may be granted against defendants Dill and Ison.


IV. Recommendations.


Based on the foregoing, it is recommended that the motion (doc. 68) to dismiss filed by the county defendants be granted in part and denied in part as follows: it is recommended that the claims against defendants Dill and Ison be dismissed and that the motion otherwise be denied.  It is further recommended that the motion (doc. 73) to dismiss filed by the medical defendants be granted in part and denied in part as follows: it is recommended that the claims against defendants Von Kiel, Shafer, Becker, Hare, Windon, and Mae Baldwin be dismissed and that the motion otherwise be denied.

It is recommended that the case be remanded to the undersigned

for further proceedings.


                                        /s/ J. Andrew Smyser
                                        J. Andrew Smyser
                                        Magistrate Judge


Dated: February 16, 2012.