**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHANNON MAYO, SR.,** | : | |
| **Plaintiff** | : | **No. 1:10-cv-01869** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **COUNTY OF YORK, et al.,** | : | **(Magistrate Judge Schwab)** |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Before the Court is the Report and Recommendation of Magistrate Judge Schwab, in which she recommends that the Court grant the County Defendants' motion for summary judgment (Doc. No. 136), grant the Medical Defendants' supplemental motion for summary judgment (Doc. No. 185), and close this case.  (Doc. No. 202.)  After the Court granted Plaintiff Shannon Mayo two extensions of time to object to the Report and Recommendation, Plaintiff filed a "Motion to Stay Proceeding or 120 day Extension and Appoint Counsel."  (Doc. No. 209.)  For the reasons that follow, the Court will construe Plaintiff's filing as objections, overrule those objections, adopt Magistrate Judge Schwab's Report and Recommendation, grant the motions of both the County Defendants and Medical Defendants, and close this case.

I.      **BACKGROUND**

The lengthy factual and procedural background of the above-captioned action is detailed in Magistrate Judge Schwab's Report and Recommendation (Doc. No. 202), and the Court need not reproduce it here.  Plaintiff presents numerous Section 1983 claims against several defendants based on his detention and medical care at the York County Prison while he was detained there before his criminal trial in 2009 and 2010.  Throughout this litigation, the defendants have been treated as two groups: corrections employees of York County (the County

Defendants), and the medical providers at York County Prison (the Medical Defendants).[1]  (Doc. No. 102 at 2.)  On March 29, 2013, the Court adopted an earlier Report and Recommendation from Magistrate Judge Carlson and granted summary judgment on most of the claims against the Medical Defendants.  (Doc. No. 164.)  The County Defendants filed their own motion for summary judgment on October 24, 2012, and that motion is addressed in the present Report and Recommendation.  (Doc. Nos. 136, 202.)  In addition, the Medical Defendants filed a supplemental summary judgment motion, also addressed in the present Report and Recommendation, covering Plaintiffs' remaining claims against them.  (Doc. No. 185.)

The County Defendants seek summary judgment as to the entire action; the claims against them include: inadequate medical care, conditions of confinement, procedural due process, excessive force, property deprivation, retaliation, equal protection, free exercise of religion, interference with incoming mail, access to courts, and a municipal liability claim against the County of York itself.  (Doc. No. 202 at 18-59.)  The only remaining claims against the Medical Defendants are for retaliation against Defendant Mike Baldwin, for the conditions of confinement, and for inadequate medical care against Defendant Prime Care, Inc.  (Doc. No. 164 at 9.)  Magistrate Judge Schwab issued her Report and Recommendation on March 3, 2014. (Doc. No. 202.)  Plaintiff requested extensions of time specifically to object on March 26, 2014, and again on May 14, 2014.  (Doc. Nos. 203, 207.)  On July 24, 2014, Plaintiff filed a motion to stay the proceedings and to appoint counsel, or for a 120-day extension.  (Doc. No. 209.)

---

[1] The County Defendants include the County of York and its individual employees at York County Prison, while the Medical Defendants include Prime Care, Inc., which is the corporate contractor who provides medical care at York County Prison, and several of its individual employees.  (Doc. No. 202.)

Because Plaintiff filed his motion after requesting multiple extensions to object to Magistrate

Judge Schwab's Report and Recommendation, and because many parts of Plaintiff's 49-page

filing are, in substance, objections to specific recommendations from Magistrate Judge Schwab,

the Court will treat Plaintiff's filing as objections.  The Court will also briefly address the stated

relief requested in Plaintiff's filing.

## II.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is

warranted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is

material if it might affect the outcome of the suit under the applicable law, and it is genuine only

if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a

verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

(1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient

disagreement to require submission to the jury or whether it is so one-sided that one party must

prevail as a matter of law.  Id. at 251-52.  In making this determination, the Court must "consider

all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City

Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an

absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d

135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of

evidence to support the non-moving party's claims, "the non-moving party must rebut the

motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal

memoranda, or oral argument." <u>Berckeley Inv. Grp. Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir.

2006); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  If the non-moving party "fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden at trial," summary judgment is warranted.

<u>Celotex</u>, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the non-moving

party must provide, a court should grant summary judgment when the non-movant's evidence is

merely colorable, conclusory, or speculative.  <u>Anderson</u>, 477 U.S. at 249-50.  There must be

more than a scintilla of evidence supporting the non-moving party and more than some

metaphysical doubt as to the material facts.  <u>Id.</u> at 252; <u>see also</u> <u>Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Further, a party may not defeat a motion for

summary judgment with evidence that would not be admissible at trial.  <u>Pamintuan v. Nanticoke

Mem'l Hosp.</u>, 192 F.3d 378, 387 (3d Cir. 1999).

The Magistrate Act,  28 U.S.C. § 636, and Federal Rule of Civil Procedure 72(b), provide

that any party may file written objections to a magistrate's proposed finding and

recommendations.  In deciding whether to accept, reject, or modify the Report and

Recommendation, the Court is to make a <u>de novo</u> determination of those portions of the Report

and Recommendation to which specific objections are made.  28 U.S.C. § 636(b)(1); <u>see also</u>

<u>Sample v. Diecks</u>, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  The district court may accept, reject,

or modify, in whole or in part, the findings and recommendations contained in the report.  28

U.S.C. § 636(b)(1)(C); M.D. Pa. Local Rule 72.3.

## III.   DISCUSSION

Although Magistrate Judge Schwab's Report and Recommendation addresses all claims

4

from both motions for summary judgment, Plaintiff's filing, construed as objections and liberally

read, raises substantive objections to only three of her recommendations.  (Doc. No. 209 at 1-2,

8, 17, 19, 21-23.)  The balance of Plaintiff's filing accuses Magistrate Judge Schwab of bias,

asks the Court to consider Plaintiff's criminal appeal as grounds for granting a stay, and accuses

opposing counsel of misleading the Court.  (See e.g., id at 3-4, 19-20, 25) ("Plaintiff has done his

best to respect Judge Schwabb [sic] but, has to say that she has been biased and prejudice

towards plaintiff and his evidence since she was assigned to this matter.").

Plaintiff has raised specific objections to three claims: the denial of medical treatment by

the County Defendants, the denial of medical treatment by the Medical Defendants, and

excessive force by County Defendant Officer Ronk.  The Court addresses these objections in

turn, considering (A) the medical treatment claims against both sets of defendants, and (B) the

excessive force claim against Officer Ronk.[2]

**A.    Denial of medical care**

Magistrate Judge Schwab found that Plaintiff failed to establish a genuine issue of

material fact with regard to his claims of inadequate medical care.  (Doc. No. 202 at 23.)  In her

Report and Recommendation, Magistrate Judge Schwab indicates that Plaintiff's evidence,

almost entirely in the form of administrative grievance paperwork, establishes only that Plaintiff

---

[2] In keeping with 28 U.S.C. Section 636, the Court has found no legal error in the remainder of Magistrate Judge Schwab's Report and Recommendation and will adopt those recommendations without further discussion.  Accordingly, the Court will grant Defendants' summary judgment motions with respect to: (1) defendants improperly named or served; (2) conditions of confinement; (3) procedural due process; (4) deprivation of property; (5) retaliation; (6) equal protection; (7) free exercise of religion; (8) interference with incoming non-legal mail; (9) access to courts; (10) municipal liability; and (11) excessive force with respect to all defendants except Defendant Corrections Officer Ronk.

filed complaints, and does not establish the truth of the events he describes in his grievance allegations.  (See id.)  Magistrate Judge Schwab also observes that Plaintiff's "medical records demonstrate that he received a significant level of medical care on numerous occasions, often several times per day, to treat his respiratory condition, and any modification to his treatment was made by a medical expert."  (Id.)  Magistrate Judge Schwab writes that the record did not contain credible evidence to substantiate Plaintiff's claim that he repeatedly coughed blood, and that Plaintiff "has merely shown that his complaint only concerns his dissatisfaction with the course of the prescribed treatment[.]"  (Id. at 24.)

In response to the Report and Recommendation, Plaintiff makes specific reference to evidence that he believes creates genuine issues of material fact regarding the quality of his healthcare.  (See e.g., Doc. No. 209 at 8.)  Plaintiff has submitted a copy of a letter he wrote to Defendant Prime Care's manager, Defendant Todd Haskins.  (Doc. No. 38 at 28-34.)  The letter accuses Prime Care's York County Prison staff members of failing to provide adequate treatment for Plaintiff's respiratory conditions.  (Id.)  Plaintiff has also submitted Prime Care's response letter, a short correspondence intimating that "[Prime Care's] review disclosed that you are receiving treatment appropriate to your condition."  (Id. at 34.)  Plaintiff also cites entries from his exhaustive prison medical history log, a document submitted initially by the Medical Defendants in support of their first motion for summary judgment.  (Doc. No. 123-1.)  Plaintiff points to an entry in the medical log, which was maintained by prison medical staff, from September 17, 2010: "Subjective: would like to talk about cough and RT RX, states cough up blood [chest x-ray] ordered today . . . ."  (Id. at 65.)  There is no indication that the chest x-ray was ever submitted as evidence.  Plaintiff's medical records reveal that he was seen by prison

medical staff frequently during the relevant time period, often multiple times weekly.  (Id. at 35-66.)  He reported diverse medical issues, ranging from his chronic respiratory and cardiac problems, to bumps on his lip and pains in his left hand.  (See id. at 36-40.)  Plaintiff complains that after the temporary cessation of his breathing treatments, his "peak flow meter readings" dropped considerably, indicating that his lung function had diminished.  (Doc. Nos. 209 at 22; 123-1 at 51; 123-2 at 3.)  Plaintiff points to two medical notations to support his claim, the first on March 2, 2010, and the second on August 31, 2010.  (Doc. No. 209 at 22.)

Plaintiff's principal evidentiary submissions are documents from the York County Prison inmate grievance process.  (E.g., Doc. No. 38 at 1-43.)  These documents include dispositions of Plaintiff's grievances and his appeals.  (See id.)  Several of Plaintiff's grievances relate to his medical care in York County Prison (e.g., Doc. No. 36 at 1-52), though the grievances are diverse, including a grievance related to the confiscation of Plaintiff's gym shorts and the prison's eventual reimbursement of $8.50 to Plaintiff for their cost (Doc. No. 38 at 9-23).  In Plaintiff's medical grievances, he complains that prison staff improperly substituted his nebulizer breathing treatments for treatments via an inhaler, that a nurse dropped part of the nebulizer on the floor in the medical unit and yet insisted that Plaintiff use it anyway, and that the timing and location of his treatments were inadequate.  (Doc. No. 36 at 1-52.)  Plaintiff has attached the responses of the prison administration and the county appellate body to his many grievances, and the prison officials routinely concluded that there had been no "reckless indifference to a serious medical need."  (See e.g., id. at 8.)  The York County Prison Board repeatedly and unanimously dismissed Plaintiff's appeals.  (E.g., id. at 6.)

The United States Constitution mandates that federal and state governments provide

adequate medical care to those that they incarcerate.  Estelle v. Gamble, 429 U.S. 97, 104-105

(1976).  In general, this protection extends equally to pre-trial detainees and those already

convicted and sentenced.  Boring v. Kozakiewicz, 833 F.2d 468, 472-473 (3d Cir. 1987).  The

constitutional protection is triggered only by behavior "repugnant to the conscience of mankind,"

and "[m]edical malpractice does not become a constitutional violation merely because the victim

is a prisoner."  Estelle, 429 U.S. at 105-106.  Further, it is not the role of a federal court to

"second-guess the propriety or adequacy of a particular course of treatment, which remains a

question of sound professional judgment."  Montilla v. Prison Health Servs., Inc., 457 F. App'x

212, 214 (3d Cir. 2012) (quoting Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762

(3d Cir. 1979)).

        In order to succeed on a claim of inadequate prison medical care, "a prisoner must allege

acts or omissions sufficiently harmful to evidence [(1)] deliberate indifference to [(2)] serious

medical needs."  Estelle, 429 U.S. at 106.  The United States Court of Appeals for the Third

Circuit has found deliberate indifference when: (a) "prison authorities deny reasonable requests

for medical treatment[,] expos[ing] the inmate to undue suffering or the threat of tangible

residual injury;" (b) officials intentionally refuse to provide medical care known to be necessary;

(c) "medical treatment is delayed for non-medical reasons," (i.e., to punish); (d) "prison officials

erect arbitrary and burdensome procedures that result in interminable delays and outright denials

of medical care to suffering inmates;" and (e) prison authorities deny inmates access to

physicians capable of evaluating medical needs.[3]  See Monmouth Cnty. Corr. Inst. Inmates v.

---

        [3] Plaintiff brings claims against both the Medical Defendants and the County Defendants,
only the former of which had primary patient care responsibility.  Non-medical prison staff
cannot be held liable for inadequate medical care absent "a reason to believe (or actual

Lanzaro, 834 F.2d 326, 348 (3d Cir. 1987) (quotations and citations omitted); see also Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).  "A medical need is serious, in satisfaction of the second prong of the Estelle test, if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Lanzaro, 834 F.2d at 348 (quotation and citation omitted).

The Court finds, as did Magistrate Judge Schwab, that Plaintiff's medical records reveal that Defendants were not deliberately indifferent to his medical needs.  Plaintiff's medical conditions are "serious" within the meaning of the law, see Lanzaro, 834 F.2d at 348, but the evidentiary record is replete with medical visits and treatment for his conditions (see e.g., Doc. No. 123-1 at 43-44).  Plaintiff does not dispute the veracity of the medical records, and he relies upon their contents in his own filings.  From the record before it, the Court cannot say that Defendants' treatment of Plaintiff was at all deficient, and the Court concludes that Plaintiff will be unable to bear his burden on this issue at trial.  In light of his medical records, Plaintiff's grievance filings, repeatedly rejected by prison and county officials, are persuasive only to show that they were filed at all.  While Plaintiff has argued that his "peak flow meter readings" have declined, he points to only two isolated readings taken eight months apart.  (Doc. No. 209 at 22.)

---

knowledge)" that prison medical staff members are "mistreating (or not treating)" an inmate. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).  Magistrate Judge Schwab found that Plaintiff has not shown that the County Defendants had adequate notice of Plaintiff's allegedly inadequate medical treatment such that they might be held accountable for it.  (Doc. No. 202 at 24.)  However, the Court finds that Plaintiff's voluminous body of grievance filings related to his medical care, while not ultimately availing as to the truth of the events he reports in them, would create a genuine fact issue as to the County Defendants' knowledge of Plaintiff's alleged medical woes.  Even still, this finding alone is not enough to prevent the Court from adopting Magistrate Judge Schwab's Report and Recommendation, because Plaintiff has failed to produce adequate evidence on other fronts as well, and Defendants are nonetheless entitled to summary judgment.

Plaintiff has not produced any evidence to show that the decline in readings was medically serious or even caused by the Defendants' actions. The Court has addressed Plaintiff's inadequate medical treatment claim against the Medical Defendants before, and technically only Prime Care itself and the County Defendants are still implicated by this claim. (Doc. No. 164 at 4-5, 9.) The relevant medical care addressed in the Court's earlier order is the same conduct the Court addresses again here, and Plaintiff has provided the Court with no new evidence. Accordingly, the Court finds that the County Defendants and the remaining Medical Defendant are entitled to summary judgment on Plaintiff's claim for inadequate medical care.

**B.      Excessive force**

Plaintiff alleges various incidences that he claims constituted the use of excessive force against him by the County Defendants. (Doc. No. 202 at 34.) Upon review of the evidentiary record, including a video showing one of the alleged instances of excessive force, Magistrate Judge Schwab recommended granting the County Defendants' summary judgment motion. (Doc. No. 202 at 34-37.) The video evidence concerns a July 10, 2010, incident during which Plaintiff alleged that Defendant Corrections Officer Ronk needlessly struck him in the hallway causing him serious back injuries.[4] (Id. at 36.) In light of the video, Magistrate Judge Schwab concluded that "the amount of force used in this situation was de minimis and not at all repugnant" to the conscience of mankind. (Id. at 37.) An affidavit, filed with the permission of the Court, from Deputy Warden of Operations at York County Prison John Steiner authenticates the video and its chain of custody, providing further that the video "shows an accurate

---

[4] Plaintiff also named Defendant Corrections Officer Ronk in his administrative grievances unrelated to the July 10, 2010 incident. (See e.g., Doc. Nos. 38 at 38-41; 40 at 1-5.)

representation of the events that Inmate Mayo refers to in . . . his amended complaint, which

allegedly involve the use of excessive force by Corrections Officer Ronk."  (Doc. No. 175-1 ¶¶

1-6.)

Plaintiff has made a substantive objection only to Magistrate Judge Schwab's

recommendation regarding the July 10, 2010, incident involving Defendant Corrections Officer

Ronk.  (See Doc. No. 209.)  Plaintiff devotes much of his objections to challenging Magistrate

Judge Schwab's evidentiary determination.  (See e.g., id. at 2) ("Judge Schwabb [sic]

misrepresents the facts of the videotape.  The video contradicts the Judge's claims . . . .").

Plaintiff goes so far as to question whether or not Magistrate Judge Schwab viewed the video

evidence at all.  (Id. at 3) ("My inquiry is[,] did Judge Schwabb [sic] actually view the video?").

Plaintiff vacillates between arguing that he has not had the chance to view the video evidence

and arguing that the video directly contradicts Magistrate Judge Schwab's findings.  (Id. at 3-4.)

Plaintiff submitted the administrative grievance record as evidence, including the prison

administration's record of its investigation and subsequent rejection of Plaintiff's complaint.

(Doc. Nos. 37 at 7-8; 38.)  Plaintiff claims that he received Tylenol for severe back pain after the

July 10, 2010 incident.  (Doc. No. 209 at 6; see also Doc. No. 40 at 10.)  In related

administrative grievances, however, the prison administration was unable to confirm that such a

prescription was ever made.  (Doc. No. 37 at 4.)  Plaintiff has also attached his request-for-

medical-attention form from July 10, 2010.  (Doc. No. 40 at 39) ("Reason for Request: Ronk

C.O. hurt my back when he hit me.").  Plaintiff's staff-maintained medical logs do not reflect a

July 10, 2010, visit, but a notation from July 15, 2010, made by Nurse Danica Hare indicates that

Plaintiff complained of severe back pain and was icing his back.  (Doc. No. 123-1 at 45.)

Plaintiff's medication records show that Dr. Erik Von Kiel provided Plaintiff with Tylenol from April 16, 2010 (months before the incident), until July 19, 2010.  (Id. at 13.)

The Fourteenth Amendment secures the rights of state and federal pre-trial detainees to be free from excessive force when in custody.  Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) ("It is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (dictum).  As the United States Court of Appeals for the Third Circuit has held, the resolution of a Fourteenth Amendment (or an Eighth Amendment) excessive force claim necessitates a two-fold inquiry: first, whether "the deprivation was sufficiently serious to fall within the [Fourteenth Amendment's] zone of protections;" and if so, "whether force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm."[5]  Fuentes v. Wagner, 206 F.3d 355, 344-345 (3d Cir. 2000) (citing Wilson v. Seiter, 501 U.S. 294, 299 (1991)).  A detainee-plaintiff does not necessarily need to show a traumatic injury to succeed on an excessive force claim, but the constitution's protections do not reach "de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (quoting Whitley v. Abers, 475 U.S. 312, 327 (1986)).  Courts weigh several factors when evaluating a claim against a corrections officer for excessive force,

---

[5] The Fuentes court also explained that the Eighth Amendment standard employed by that court constituted a floor on the protections afforded pre-trial detainees, because pre-trial detainees protected by the Fourteenth Amendment "are entitled to at least as much protection as convicted prisoners . . . ." Fuentes, 206 F.3d at 344 (citing Kost v. Kozakiewicz, 1 F.3d 176, 188 n.10 (3d Cir. 1993)).  However, "it appears that no determination has as yet been made regarding how much more protection unconvicted prisoners should receive." Fuentes, 206 F.3d at 344.  Because the Fuentes plaintiff's claim failed even by the Eighth Amendment standard, that court had no occasion to elucidate a sui generis Fourteenth Amendment excessive force standard.  Here, Plaintiff's excessive force claim also fails under the Eighth Amendment standard.

including: (1)

"the need for the application of force;" (2) the reasonableness of the force used relative to the

need for force; (3) "the extent of the injury inflicted;" (4) the objective threat to prison staff and

other inmates; and (5) "any efforts made to temper the severity of a forceful response." Brooks

v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 321).

Upon review of the entire evidentiary record and the video evidence in particular, the

Court finds, as did Magistrate Judge Schwab, that the County Defendants are entitled to

summary judgment on Plaintiff's claim for excessive force.  The video evidence demonstrates, at

most, a de minimis use of force by Defendant Corrections Officer Ronk.  (Doc. No. 169); see

Hudson, 503 U.S. at 9-10.  When weighed against this compelling evidence, the authenticity of

which is sworn and uncontroverted, Plaintiff's proffers are insufficient to defeat summary

judgment.  Plaintiff's prescription for Tylenol pre-dates the July 10, 2010, incident by several

months, so no inference can be drawn that it was prescribed in response to the incident.  While

Plaintiff complained of an injury as a result of the incident, there is no genuine objective

evidence to corroborate that such an injury actually occurred.  Because the force was de minimis,

the Court finds that it was a reasonable response to a minor disciplinary need.  See Whitley, 475

U.S. at 321.  Accordingly, the Court finds that no genuine issues of material fact exists as to

Plaintiff's excessive force claim, and that Defendants are entitled to summary judgment.

## III.     CONCLUSION

In addition to objecting to Magistrate Judge Schwab's Report and Recommendation,

Plaintiff has requested a stay, an extension of time, or the appointment of counsel.  (Doc. No.

209.)  In light of the Court's analysis, Plaintiff's requests are denied.  In addition, the Court has

found repeatedly in this case that Plaintiff's claims do not warrant the appointment of civil counsel.  The threshold inquiry concerning the appointment of civil counsel is "whether the plaintiff's case has some arguable merit in fact and law."  (Doc. No. 66 at 2) (citing <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 498-499 (3d Cir. 2002)).  That is not the case here.

For the foregoing reasons, the Court will adopt Magistrate Judge Schwab's Report and Recommendation and grant summary judgment to Defendants on all claims.  An order consistent with this memorandum follows.

.